IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MACKIN ENGINEERING COMPANY,

      Plaintiff,

  v.

AMERICAN EXPRESS COMPANY,
AMERICAN EXPRESS TRAVEL RELATED
SERVICES COMPANY, INC., AMERICAN
EXPRESS BANK, FSB,

      Defendants.

10cv1041
**ELECTRONICALLY FILED**

**MEMORANDUM OPINION**

**I.**     **Introduction**

Before the Court is a Motion to Dismiss filed on behalf of defendants American Express Co., American Express Travel Related Services Co., Inc., and American Express Bank, FSB (collectively, "American Express"). Doc. No.4. Plaintiff, Mackin Engineering Co. ("Mackin"), who originally brought this lawsuit in the Court of Common Pleas for Allegheny County, contends that defendants breached their corporate credit card contract with the plaintiff by failing to act in accordance with the implied terms of good faith and fair dealing. After removing the case to this Court, defendants filed the instant Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) seeking dismissal of the claim for breach of contract. For the reasons set forth in greater detail below, the Court will grant defendants' Motion to Dismiss (doc. no. 4).

**II.**     **Standard of Review**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." A complaint may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts

to state a claim to relief that is plausible on its face." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957), which allowed dismissal of a claim only if "no set of facts" could be conceived to support it)). To survive a Fed.R.Civ.P. 12(b)(6) Motion to Dismiss, a claim for relief now "requires more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1950 (2009) (citing *Twombly*, 550 U.S. at 555). While Rule 8 was "a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*.

After *Iqbal*, the district court's determination of a Fed.R.Civ.P. 12(b)(6) Motion to Dismiss for failure to state a claim is as follows:

> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]'-'that the pleader is entitled to relief.' " This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

The court will accept all of the plaintiff's factual allegations as true and construe all inferences in the light most favorable to the non-moving party. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)). However, a court will not accept bald assertions, unwarranted inferences, or

2

sweeping legal conclusions cast in the form of factual allegations. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 215 (3d Cir. 2002); *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 n. 8 (3d Cir. 1997). A court is not required to consider legal conclusions; rather, it should determine whether the plaintiff should be permitted to offer evidence in support of the allegations. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). To satisfy the requirement of Fed.R.Civ.P. 8(a)(2) for a "short and plain statement of the claim showing that the pleader is entitled to relief," a plaintiff must aver sufficient factual allegations which "nudge" its claims "across the line from conceivable to plausible." *Iqbal*, 129 S.Ct. at 1951.

Therefore, a plaintiff must put forth sufficient facts that, when taken as true, suggest the required elements of a particular legal theory. *See Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315 (3d Cir. 2008) (citing *Phillips*, 515 F.3d at 224). However, this standard does not impose a heightened burden on the claimant above that already required by Rule 8, but instead calls for fair notice of the factual basis of a claim and enough specificity to raise a reasonable expectation that discovery will reveal evidence of the necessary element. *Twombly*, 550 U.S. at 555; *Phillips*, 515 F.3d at 234.

### III. Factual Background and Procedural History

With these standards of review in mind, the facts as alleged in the Complaint and all reasonable inferences drawn from those facts are taken as true.

Mackin is a civil engineering firm in Pittsburgh, Pennsylvania and American Express is a New York corporation with authority to do business in Pennsylvania. Mackin has had an American Express Business Credit Card Account under a contract with American Express, but does not have a copy of its original application for this credit card or a copy of its original contract with American Express. Mackin's owner and some of its employees have American

3

Express business credit cards that may be used in accordance with their employment.

On or about July 21, 2006, Mackin discovered that its then controller had been embezzling funds from it, and she was discharged from employment. Mackin then began investigating the employee's embezzlement and discovered that the employee had used a Mackin business check dated June 14, 2006 in the amount of $28,160.07 to pay for purchases made on her personal, non-business related American Express credit card, which had a different number from Mackin's American Express business card. Mackin complained of the theft to American Express, and American Express credited Mackin's account in the amount of $28,160.07 on October 17, 2006. Mackin's employee had concealed her embezzlement and fraud.

Further investigation revealed that Mackin's employee had used Mackin's business checks signed and issued by her to pay for her personal credit card account over a period of approximately three years, which totaled to $843,958.84. American Express negotiated Mackin's improperly used business checks during this period of time and never alerted Mackin that its checks were being received, cashed, and used in payment of charges made by Mackin's employee on her personal American Express credit card.

Mackin alleges that American Express had a duty to inform it of the misappropriation of its funds, and American Express breached a duty of good faith and fair dealing in the performance of its contract. Mackin further alleges that the contract imposes a duty on American Express under the doctrine of implied necessity not to use Mackin's funds to pay for the strictly personal charges of a Mackin employee; and that under the Uniform Commercial Code ("U.C.C."), American Express had a duty to use ordinary care with respect to negotiating the unauthorized Mackin checks and crediting them as payment of the employee's personal account. Additionally, Mackin argues that American Express has been unjustly enriched by its conversion

4

as payee of Mackin's checks.

The one-count Complaint avers that American Express has breached its contract with Mackin in the following ways: (1) by failing to follow up after it learned of the misapplication of the Mackin check for $28,160.07; (2) by failing to comply with the requirements of the Bank Secrecy Act; (3) by failing to investigate and report suspicious activity or potentially suspicious activity; (4) by failing to alert Mackin to the suspicious or potentially suspicious activity; (5) by failing to detect and report financial crimes and fraud being committed by Mackin's employee; (6) by honoring the unauthorized check; (7) by failing to use ordinary care when it received the unauthorized checks; and (8) by failing to inquire of Mackin whether the use of its funds to pay the employee's personal credit card was authorized.

Following notice of this Complaint filed in the Allegheny County Court of Common Pleas, American Express removed this case to the United States District Court for the Western District of Pennsylvania due to diversity of citizenship[1] and filed the instant Motion to Dismiss.

## IV. Discussion

### A. Plaintiff's Claim For Breach of Contract is Displaced by the U.C.C. and Pursuant to the Statute of Limitations of the U.C.C., Plaintiff Has Not Timely Brought This Action

For the reasons set forth below, the Court concludes: (1) Plaintiff's breach of contract claim is displaced by the U.C.C.; (2) the U.C.C. precludes this claim from being brought before the Court because the statute of limitations has run; and (3) therefore, the claim is time-barred.

**(1) The U.C.C., Rather than Common Law, is Applicable**

While plaintiff attempts to cast its claim as a common law breach of contract under

---

[1] Mackin is a citizen of Pennsylvania and American Express is a citizen of New York, but according to American Express it is headquartered in Utah. The amount in controversy exceeds $75,000 so removal to federal court is proper.

Pennsylvania law,[2] it cannot avoid the reality that its claim is based entirely on allegedly misappropriated company checks that were transmitted to and received by defendants in discharge of the debt owed by plaintiff's former controller. Plaintiff alleges in its complaint that defendants negotiated checks drawn on plaintiff's account improperly because the "issuance" of the checks and the signatures thereon were "unauthorized." Complaint ¶¶ 15-16, 21-22. In Paragraph 10 of the complaint, plaintiff attempts to recover all of the checks negotiated by defendants as payee. Complaint, ¶ 10. Plaintiff's claim is actually based *entirely* on defendants' alleged conversion of negotiable instruments, and is therefore preempted by Article 3 of the U.C.C. See U.C.C. § 3-420 (stating than an instrument is converted if a bank makes or "obtains payment with respect to the instrument not entitled to enforce the instrument or receive payment"). See also, 13 Pa. Cons. Stat. Ann § 3420 (same); Utah Code Ann. § 70A-3-420 (same).

The United States District Court for the Eastern of Pennsylvania stated, in finding that the U.C.C. displaced a common law negligence claim based on negotiable instrument, "the effect of [§ 3-420] for displacement purposes is not confined to any particular theory; instead its intended purpose is to provide exclusive regulations to govern the unauthorized payment of negotiable instruments." *Gress v. PNC Bank, N.A.* 100 F.Supp. 2d 289, 292 (E.D. Pa. 2000).

In cases where the U.C.C. "provide[s] a comprehensive remedy for the parties to a transaction, a common-law action will be barred." *New Jersey Bank, N.A. v. Bradford Sec. Operations*, 690 F.2d 339, 346 (3d. Cir. 1982). While the U.C.C. does not bar all common law claims, it does displace the instant claim "insofar as reliance on the common law would thwart

---

[2] While plaintiff alleges that Pennsylvania common law applies, and neither the UCC of the State of Utah nor that of Pennsylvania U.C.C. statute is applicable to this case; and American Express argues that the credit card agreement contains a choice of law provision of the State of Utah, because American Express is headquartered in Utah, no choice of law analysis is required because there is no conflict between applicable Utah and Pennsylvania law. Both Utah and Pennsylvania have adopted the UCC and both states' laws provide for a three-year statute of limitations.

the purposes of the Code." *Hollywood v. First Nat'l Bank of Palmerton,* 859 A.2d 472, 484 (Pa. Super. Ct. 2004). See also *Bucci v. Wachovia Bank, N.A.*, 591 F.Supp. 2d 773, 780 (E.D. Pa. 2008)("Permitting a parallel common law conversion claim where recovery is specifically provided for by the Code would render the Code meaningless.")

### (2) The Statute of Limitations Pursuant to the U.C.C[3]

U.C.C. § 3-118 provides that "an action (i) for conversion of an instrument, for money had and received, or like action based on conversion, (ii) for breach of warranty, or (iii) to enforce an obligation, duty, or right arising under this Article and not governed by this section must be commenced within three years after the cause of action accrues." See also 13 Pa. Cons. Stat. § 3118(g) (2010); Utah Code Ann. § 70A-3-118(7).

Claims of conversion of negotiable instruments accrue upon negotiation of the forged instrument and the applicable limitations period commences to run and "when a negotiable instrument is converted, the tort is complete when the instrument is negotiated, regardless of plaintiff's ignorance of the conversion." *Estate of Hollywood v. First Nat. Bank of Palmerton*, 859 A.2d 472, 482 (Pa. Super. Ct. 2004). As the United States District Court for the Middle District of Pennsylvania held in *Calex Express, Inc. v. Bank of America*, discovery rules do not toll the statute of limitations. *Calex Express, Inc. v. Bank of America*, 401 F.Supp.2d 407, 412 (M.D. Pa. 2005).

The U.C.C. further clarifies the meaning of a converted instrument: "An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a

---

[3] Although the Court notes that a statute of limitations defense is not generally raised in a Rule 12 motion, "an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994).

person not entitled to enforce the instrument or receive payment." 13 Pa. Cons. Stat. § 3420(a)-(b) (2010). The U.C.C. further sets forth the remedy: "[T]he measure of liability is presumed to be the amount payable on the instrument." *Id*.

The Court finds that the holding of the United States District Court for the Eastern District of Pennsylvania in *Bucci v. Wachovia Bank* to be instructive. 591 F.Supp.2d 773, 773 (E.D.Pa. 2008). In the *Bucci* case, a business owner sued the bank on claims of negligence, negligent misrepresentation, constructive fraud, fraud, conversion, breach of contract, and breach of duty of good faith and fair dealing because his employee had embezzled funds from him and the bank did not disclose the embezzlement to him. The Court held that the U.C.C. displaced his common law claim for conversion which alleged that the bank unlawfully negotiated checks to perpetuate the employee's embezzlement. *Id*. The Court further held that the bank was not required to disclose that Bucci's employee was cashing company checks. *Id*.

Also, in *Menichini v. Grant*, an employer sued his former employee and the bank for conversion of the employer's property when the employee, Grant, used company checks to embezzle funds from her employer and the bank accepted the checks. 995 F.2d 1224, 1224 (3d Cir. 1993). The Court found that the employer, Menichini, negligently facilitated his employee's forgeries. *Id*. at 1227. Furthermore, the Court found that "strict application of the statute of limitation period, while predictably harsh in some cases, best serves the twin goals of swift resolution of controversies and certainty of liability advanced by the U.C.C.," reasoning that the commercial world and the public would be better served by keeping the responsibility for careful bookkeeping and monitoring accounts and employees on the employer, who is in the best position to do so. *Id*. at 1230.

In *U.S. Steel Corp. v. Express Enterprises of Pennsylvania*, an employer's claim for common law negligence against a check-cashing agency for cashing fraudulently obtained checks was displaced by the U.C.C. section governing the specific conduct that plaintiff complained of. 2006 WL 771407 (Pa. Com. Pl. 2006). The Court therefore reasoned that "the U.C.C. intends to produce inter-jurisdictional uniformity as to the commercial activities it governs and, further, that displacing common law tort liability with respect to such activities is vital to that project." *Id.* at 1, quoting *Gress v. PNC Bank*, 100 F.Supp.2d 289, 292 (E.D.Pa. 2000).

### (3) This Claim is Time Barred

As defendants' Motion to Dismiss explains, and a fair reading of the Complaint reveals, plaintiff's claims are based entirely on misappropriated company checks that were transmitted to and received by American Express in discharge of the debt owed by plaintiff's former employee. Plaintiff discovered its employee's fraud because of a misapplication of a June 14, 2006 check, and on July 21, 2006, plaintiff became aware of the totality of the employee's embezzlement. The statute of limitations for this action began to run upon negotiation of the forged instrument, which is when American Express accepted plaintiff's check and credited it to the third-party employee's credit card account. However, neither the employee's use of plaintiff's funds to pay her personal credit card nor the plaintiff's discovery of this embezzlement falls within the three year statute of limitations the U.C.C. provides, so plaintiff's argument for beginning to run statute of limitations at discovery does not save its claim. Even if the statute of limitations was tolled until the time that plaintiff knew of the theft of its funds (July 21, 2006), the claim would still be time-barred.

The Court is mindful that the purpose of the statute of limitations of three years under the

9

U.C.C., in addition to furthering the goals of certainty of liability, finality, predictability, uniformity and efficiency in commercial transactions, is that the victim of the conversion is in the best position to detect the loss and take appropriate action, and therefore, the statute of limitations encourages efficiency and careful record-keeping. *See Rodrigue v. Olin Employees Credit Union*, 406 F.3d 434, 446-7 (3d Cir. 2005). Here, plaintiff was clearly in a better position to detect its employee's fraud more easily and quickly than American Express. Plaintiff also had the opportunity to initiate this lawsuit within the statute of limitations after it discovered the entirety of its employee's conversion in 2006, but chose not to do so.

In summary, this action is based on conversion of an instrument, and thus is subject to the three year statute of limitations set forth by the U.C.C. The U.C.C. provides the remedy plaintiff seeks for the action it is bringing against American Express – reimbursement of the negotiated sums. The language of the U.C.C. indicates that it is intended to preempt a common law claim of this kind. However regrettable the circumstances of plaintiff's situation, the Court cannot countenance plaintiff's attempts to maneuver around the U.C.C. and allege a claim against American Express under common law when the purpose and intent of the U.C.C. is to provide a remedy (albeit when pursued in a timely fashion) for the harm that plaintiff suffered.[4]

## III. Conclusion

Because plaintiff's one count Complaint for breach of contract is actually displaced by the U.C.C., and on the face of the Complaint, plaintiff has averred that it became aware of the alleged misappropriations in June (or July) of 1996, and did not file its Complaint until July 15, 2010 (over four years later), this claim has been filed outside the statute of limitations of three years mandated by the U.C.C.

---

[4] Having found that the U.C.C. is applicable and that the statute of limitations has run, the Court will not address defendants "alternative" argument that if this case sounds in contract (either under Pennsylvania or Utah law), rather than under the U.C.C, that American Express has not breached any terms of the card member agreement.

Under Fed. R. Civ. P. 15(a), leave to amend the Complaint must be freely given in the absence of circumstances such as undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or futility of amendment. Under these circumstances, the Court must allow the plaintiff leave to amend its complaint, except where it would be futile to do so. Here, amendment would be futile because on the face of the complaint, the claim was brought outside the statute of limitations, and is therefore barred by the U.C.C.'s three year limitations period. See *Jablonski v. Pan American World Airways, Inc.*, 863 F.2d 289 (3d Cir. 1988) (district court did not abuse its discretion in denying a motion to amend where claims sought to be brought are time-barred). No further amendment or specificity could save plaintiff's claim.

The Court will therefore grant defendants' motion to dismiss (doc. no. 4). An appropriate order follows.

**SO ORDERED** this 12th day of October, 2010.


s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge


cc: All counsel of record